IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

DONALD E. SMITH,

    **Plaintiff,**

v.                                **Civil Action No. 5:04-1166**

A.T. MASSEY COAL COMPANY, INC.
EMPLOYEES' COMPREHENSIVE
BENEFITS PLAN, et al.,

    **Defendants.**

## MEMORANDUM OPINION

Pending before the court are cross motions for summary judgment.  (See Doc. Nos. 15 & 16.)  For the reasons outlined below, in an accompanying judgment order, plaintiff's motion for summary judgment (Doc. No. 15) is DENIED and defendants' motion for summary judgment (Doc. No. 16) is GRANTED.  The Clerk is DIRECTED to remove this case from the active docket of the court.

In short, plaintiff argues that his denial of benefits resulted from a Massey-controlled committee doing everything possible out of self-interest to thwart his claim.  Plaintiff contends that the Committee ignored evidence favoring plaintiff including an award of Social Security disability benefits ("DIB") and an opinion from his doctor that he could not work, impermissibly delayed handling his claim such that he would be unable to secure additional medical testimony, and incorrectly applied plan-provided standards.  In response, defendants contend that the Committee's decision did not result from any conflict of

interest and was legally proper.

Having reviewed the documents filed by the parties, the terms of the plan applicable to this case, and the administrative record, the court is compelled to conclude that the plan acted properly.  Although the captive nature of the plan causes the court to use a moderately less-deferential standard of review than would typically be accorded in this case, plaintiff failed to produce the evidence necessary to justify a finding of disability.  Although the Committee's delay troubles the court, only through speculation can plaintiff argue that this delay necessarily caused the denial of benefits.

Similarly, although the Committee reached a different decision than did the Social Security Administration as to whether plaintiff was disabled, plaintiff's DIB award resulted from regulations that have no analogue in the Massey Plan. Further, the Committee was not required to consult with any vocational expert before reaching its decision.  As such, the Committee's decision was proper, and defendants' motion for summary judgment regarding Count I must be granted.

It is appropriate to grant defendants' motion for summary judgment regarding Count II because it requests relief outside of the Plan in a fashion that is not permitted under governing law. Because the court grants summary judgment on all counts in

-2-

plaintiff's complaint, the Clerk is directed to strike this case from the active docket of the court.

## I.  Factual and Procedural Background

Donald E. Smith was born July 2, 1950.  (Doc. No. 14, Administrative Record, hereinafter "R." at 1.)  In January 1983, he began working for Elk Run Coal Company ("Elk Run"), a Massey Energy subsidiary.  (Id.)  Plaintiff suffered a massive heart attack on April 2, 1997, which necessitated a surgical double bypass of his coronary artery.  (Id. at 119-24, 287.)

In September 1997, plaintiff's treating physician Dr. Bhirud reported that plaintiff could perform "[n]o heavy physical exertion" and was required to "[b]e close to emergency medical team for any sudden arrhythmia or chest pain." (Id. at 193.) Plaintiff did, however, return to work at the Twilight Winifrede II mine.  (Id. at 287.) In mid-2000, plaintiff reported to Dr. Bhirud that he had experienced episodes of feeling faint dizziness, and like he was going to pass out, and blurred vision. (Id. at 131-33.)

By June 26, 2000, plaintiff claims that he was no longer able to work.  Following a six-month waiting period, on December 12, 2000, he applied for long-term disability benefits due to tachycardia and coronary artery disease.  (Id. at 1.)  Massey Energy Company approved plaintiff's application for long-term benefits on August 20, 2001.  (Id. at 58.)

-3-

Under the Coal Company Employee's Comprehensive Benefits Plan, a participant may receive long-term disability benefits for two years, after which they must apply for continuing benefits. (See id. at 488-71.)  On October 22, 2002, Massey Energy Company wrote to plaintiff and explained that for him to receive continuing benefits after December 25, 2002, he would require reevaluation under a different standard of disability.  (Id. at 53.)  Plaintiff was directed to forward the names of all treating doctors "within the past six months" and any medical records for treatment from "January 1, 2002 through the present" for all treating doctors and information relevant to diagnosis, prognosis, and current treatment."  (Id. at 53-54.)

Defendants denied plaintiff's continuing disability claim on July 23, 2003.  On August 27, 2003, plaintiff appealed the denial.  (Id. at 290.)  After defendants denied plaintiff's appeal, inclusive of some additional evidence including a letter from plaintiff's treating physician which stated plaintiff should never work, on June 29, 2004, this appeal followed.  (See id. at 264-65.)

At the time plaintiff filed his application for disability benefits, he claimed disability based on tachycardia and coronary artery disease.  (Id. at 1.)  Plaintiff stated that he had been unable to work since June 26, 2000, and that he had an

-4-

application for Social Security Disability Insurance Benefits ("DIB") pending.  (<u>Id.</u> at 1, 3.)

Following plaintiff's application for benefits, the Plan began to gather medical information about plaintiff such that it could reach a decision.  The Plan approved plaintiff's application for benefits on August 20, 2001, after it found that plaintiff was disabled from performing his past job at Elk Run. (<u>See</u> <u>id.</u> at 59-61.)  In considering plaintiff's application, the Plan obtained a medical opinion from Dr. Michael Hess who opined that plaintiff should not perform his former work at Elk Run. (<u>Id.</u> at 216-17.)  However, Dr. Hess opined at that time that plaintiff was not disabled from all types of work and that he could be placed in another work position.  (<u>Id.</u> at 217.)  Because plaintiff was disabled from performing his job at Elk Run, his application for benefits was approved.

In the letter that informed plaintiff of the approval of his application, he was informed that he had been found "disabled" from his former job, and that he was entitled to benefits for a period of twenty-four months.  (<u>Id.</u> at 61.)  He was also informed that, after the initial 24-month period expired, his condition would have to be reevaluated to determine if he had a "continued disability."  (<u>Id.</u> at 62.)  The letter informed plaintiff that, in order to have a "continued disability," his medical condition would have to be such that he would be unable to "work at *any*

-5-

job." (Id. at 63) (emphasis in original). The letter informed
plaintiff that his LTD disability benefits would begin in
December 2000, and end in December 2002. (Id. at 58.)

On September 18, 2001, plaintiff's application for DIB was
approved. (See id. at 109-115.) In the course of that approval,
Administrative Law Judge Arthur L. Conover found that medical
consultants had found that plaintiff could perform light work.
(Id. at 113-14.) Even though Judge Conover found that plaintiff
could not perform his past relevant work, he found that

> [Plaintiff] retains the residual functional
> capacity to do sedentary work. Sedentary work
> involves lifting 10 pounds occasionally,
> office and/or docket files the rest of the
> time, sitting the greater part of an eight-
> hour workday, walking or standing the
> remainder thereof.

(Id. at 113.)

As the initial 24-month period of benefits was nearing an
end, the Plan wrote plaintiff and reminded him that, in order to
continue receiving benefits under the Plan, he was required to
have a "continued disability." (Id. at 379.) The Plan advised
plaintiff that it would need continued medical information such
that a determination could be made as to whether plaintiff had a
"continued disability." (Id.)

The Plan gathered a number of pieces of evidence incident to
the determination as to whether plaintiff had a "continuing
disability." These included:

-6-

(1)   plaintiff's DIB award, which stated in part that plaintiff "retains the functional capacity to do sedentary work" (id. at 113-14);

(2)   Dr. Hess's opinion, which stated in part that plaintiff is not "totally disabled" and "could be placed in another position" (id. at 217);

(3)   a stress isotope study which stated that, upon exercise, plaintiff could achieve 88% of the predicted heart rate for someone of his age, and no ischemia or myocardial infarction (id. at 213);

(4)   a follow-up opinion from Dr. Hess dated February 4, 2002, in which Dr. Hess stated that "because of the lack of objective evidence of disability, I still stand by my original contention that [plaintiff] is not totally disabled and . . . could be placed in another position or another training job." (Id. at 245.)

Having reviewed this information, all of which indicates that plaintiff is able to work in some job, the Plan advised plaintiff that his benefits were being terminated by letter dated July 23, 2003.  (Id. at 7.)  The letter indicated that even though plaintiff could not perform his previous job, he could perform some job.  (Id. at 11.)

Plaintiff exercised his Plan-provided right to appeal the termination decision by letter dated September 2, 2003.  (Id. at 287.)  In support of this appeal, plaintiff submitted a letter from his treating physician, Dr. Ravin Bhirud, who opined that "Plaintiff cannot and should not ever return to a working environment."  (Id. at 290.)  By letter of October 1, 2003, the Benefits Committee acknowledged receipt of plaintiff's appeal and informed him that he should provide any medical information he

had in support of his appeal.  (<u>Id.</u> at 425.)  Also, the Benefits
Committee informed plaintiff that it would be deciding his appeal
and would notify him of its decision.  (<u>Id.</u> at 425.)

     In considering plaintiff's appeal, the Benefits Committee
obtained the professional opinion or Dr. Bruce Coyer, a
cardiologist.  (<u>Id.</u> at 417.)  Based on his review, Dr. Coyer
opined that, as of December 26, 2002, plaintiff was "able to
perform gainful employment including light-duty work, modified
work, or sedentary employment . . . . " (<u>Id.</u> at 417.)

     By letter of June 29, 2004, the Benefits Committee
communicated its decision to plaintiff.  (<u>Id.</u> at 261.)  The
Benefits Committee found that plaintiff did not have a "continued
disability" given the evidence in the record.  In its letter, the
Benefits Committee recognized that Dr. Bhirud opined that
plaintiff could not work in any capacity.  (<u>Id.</u> at 265.)
However, the Benefits Committee notes that Dr. Bhirud did not
support his opinion with any objective medical evidence.  (<u>Id.</u>)

## II.  Standard of Review

     A motion for summary judgment may be granted when there are
no genuine issues of material fact and the movant is entitled to
a judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88
(1986).  Summary judgment is appropriate when the nonmoving party
has the burden of proof on an essential element of his case and

-8-

does not make, after adequate time for discovery, a showing sufficient to establish that element.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of their position.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In reviewing an ERISA claim for the denial of benefits, the court must apply a de novo standard unless the benefit plan provides the plan administrator or fiduciary with the discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the Plan provides the plan administrator with discretionary authority, the court applies an "abuse of discretion" standard, and will not disturb the denial of benefits if the decision is objectively reasonable and based upon substantial evidence.  Firestone, 489 U.S. at 111; Ellis v. Metro Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). The Plan at issue in this case gives its fiduciary discretionary authority to determine eligibility.  (See R. at 441) ("Using its discretion, the Administrator must determine whether or not an Employee is an Eligible Employee").

The parties disagree as to the degree of discretion due the administrator in this case because Massey-related entities both fund and administer the Plan.  (See Doc. No. 15 at 5; Doc. No. 17

at 4.)  Under Fourth Circuit precedent, when the plan administrator operates under a conflict of interest, the court modifies the abuse of discretion standard.  See Doe v. Group Hosp. & Med. Servs., 3 F.3d 80, 84 (4th Cir. 1995); Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 343 (4th Cir. 2000) (holding that a conflict of interest "*must* be weighed in determining whether there is an abuse of discretion.").  The fiduciary decision will be entitled to some deference, but this deference is lessened "to the degree necessary to neutralize any untoward influence resulting from the conflict."  Doe, 3 F.3d at 87. Under this sliding-scale standard of review, the more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility, "the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it."  Ellis, 126 F.3d at 233.

In Browning v. A.T. Massey Coal Company Employees' Comprehensive Benefit Plan, No. 2:00-0461, 2002 WL 1822931, at *3 (S.D. W. Va. June 26, 2002) (Goodwin, J.), the court found that a modified abuse of discretion standard was appropriate for this Plan.  The court noted that

> Here, the Plan is funded by A.T. Massey,
> appoints A.T. Massey as its fiduciary, and is
> administered by the Benefits Committee, which
> is a division of A.T. Massey.  The mailing
> address for the Benefits Committee is listed

-10-

at the same address as A.T. Massey, and the
Plan provides that all correspondence should
be mailed to the Benefits Committee c/o A.T.
Massey.  All voting members on the Benefits
Committee are either employees of A.T. Massey
or employees of one of its subsidiaries.
Under these circumstances, the court finds
that a conflict of interest is present and
will weigh that factor in determining whether
there was an abuse of discretion, and accord
less deference to the administrator's decision
to the degree necessary to neutralize any
untoward influence resulting from the
conflict.

See id. (citing cases) (internal citation omitted).

In an affidavit, defendants indicate that the picture
painted by Judge Goodwin has been modified somewhat as a doctor
who is not a Massey employee has been added to the Benefits
Committee to help facilitate the understanding of medical
evidence.  (See Doc. No. 18-2, Poma Aff. ¶ 6.)  Defendants state
that members of the Benefits Committee are reminded of their
obligation to exercise independent judgment while considering a
plan participant's appeal and that steps have been taken to
insulate the Benefits Committee from untoward influence.  (Id. ¶
7.)

Having reviewed the materials in the record, the court is
not persuaded that the steps defendants have taken since the time
of the Browning decision have mitigated all possibility of
conflict of interest.  However, in applying a sliding scale, it
is clear that defendants are now entitled to a more deferential
standard of review than was applied in Browning.  Since the time

-11-

of that decision, the Benefits Committee has added an independent
member and appears to have made efforts to remedy the appearance
of impropriety.[1]  As such, the court will apply a more
deferential standard of review than was applied in <u>Browning</u>, but
will examine the record with a moderate degree of greater
scrutiny than would typically be accorded.

### III.  Decision Issue

Plaintiff contends that summary judgment is appropriate on a
number of grounds.  These include that defendants:

(1)  made untimely decisions in a manner that prevented
plaintiff from making the required showing;

(2)  acted arbitrarily and capriciously under the applicable
standard;

(3)  failed to apply correctly the correct definition of
continuing benefit awards;

(4)  refused to consider the highly analogous Social
Security disability determination that awarded
plaintiff benefits;

(5)  ignored the recommendations of plaintiff's treating
physician and overrode the concerns of their
independent medical examiner; and

(6)  generally acted for the exclusive benefit of the Plan
as against the good of its participants.

(<u>See</u> Doc. No. 16 at 1.)

---

[1] From the record, it appears that Massey has made efforts
to make the Committee independent.  For instance, the minutes of
the Benefits Committee meeting reflect that Committee members
were informed that they were an "independent committee convened
solely to decide benefits and for no other reason" and that their
decisions would be reported to no one outside of parties
necessary to make payments.  (<u>See</u> R. 411.)

-12-

In turn, defendants contend that summary judgment should be granted in their favor because the Plan acted appropriately in its denial of plaintiff's claim.  (See Doc. No. 17 at 1, 17.) Having reviewed the administrative record and the substantial amount of briefing by the parties, for the reasons outlined below, it is clear that defendants' motion for summary judgment must be granted and plaintiff's motion for summary judgment must be denied.

**A.   Plaintiff Has Made No Showing that Any Plan-Created Delay Prejudiced Its Decision.**

First, although defendant's delay in reaching a decision in this case may be problematic, it provides no basis to decide this case for plaintiff.  Specifically, plaintiff contends that defendants misinformed plaintiff as to the dates applicable to the "continuing disability" decision.  (See Doc. No. 15 at 7.) Plaintiff notes that

> [t]he Plan must base its evaluation of his continued disability on [plaintiff's] condition . . . on December 26, 2002.  Yet [plaintiff] was directed to provide information through "the present," that is, October 22, 2002.  If he had been correctly informed, [plaintiff] could have undergone testing (such as the testing Dr. Coyer requested more than a year later) before the crucial time period for disability determination ended.  Instead, as directed, [plaintiff] provided his medical records for treatment from January 1, 2002, through October 30, 2002.

(Id.)

-13-

This argument is flawed for at least two reasons. First, disregarding any misinformation ostensibly provided by defendants, it is clear under Fourth Circuit law that plaintiff has the burden of establishing disability. Elliott v. Sara Lee Corp., 190 F.3d 601, 605 (4th Cir. 1999). Second, this argument is premised on a highly selective reading of the involved letter. As defendants note in their response, in actuality, the letter requests plaintiff provide information within sixty days of the letter, or, until December 21, 2002. (See R. 54.) It also states that plaintiff may be requested to undergo a medical exam as part of the process, indicating that the time period for relevant information did not close in October.

Finally, particularly given the fact that there is no objective medical evidence in the record that plaintiff is disabled from all work, plaintiff has no way other than through speculation to demonstrate what new evidence would have shown, even if defendants had not missed applicable deadlines in this case. Given that there is no objective medical evidence before October 2002 that he was disabled from all work, and that later testing similarly found no such evidence, it seems unlikely that any evidence plaintiff was ostensibly prevented from acquiring would be any different. As this is the case, the court rejects this argument.

**B.    The Plan's Decision Was Supported by Appropriate Evidence.**

The crux of plaintiff's argument is that the Plan's decision was inappropriate as plaintiff suffered from a "continuing disability" under its terms.  (<u>See</u> Doc. No. 15 at 11-18.) Specifically, plaintiff contends that defendants misapplied the Plan's standard for "continued disability" through basing the inquiry on only medical information; that defendants erred when they ignored the DIB award; and that defendants erred in how they treated medical testimony.  (<u>Id.</u>)  In turn, defendants move for summary judgment on the grounds that defendants' decision was proper.  (<u>See</u> Doc. No. 17 at 9-13.)

Under the Plan, a "Continued Disability"

> is a Disability that continues for more than 24 months after the Disabled Participant becomes entitled to receive Monthly Disability Benefits under the Plan.  A Continued Disability must be a Disability that renders the Disabled Participant completely unable to engage in any occupation or employment for which he is qualified or may reasonably be expected to become qualified by any training, education or experience.

(<u>See</u> R. 514) (Plan § 14.21).  Under this provision, it is clear that following the initial 24-month period of disability benefits, a plan participant must be completely unable to engage in any occupation or employment to remain eligible for plan benefits.

-15-

Plaintiff makes a number of arguments as to how defendants erred in denying his disability claims.  The court will address these arguments in turn.

### 1.   Defendants Had an Adequate Basis of Vocational Testimony.

Plaintiff contends defendants erred by not considering what jobs defendant could reasonably be expected to perform. Plaintiff argues that the continued-disability standard has two parts: (1) the participant must suffer from a medical or physical impairment that (2) renders him completely unable to engage in any occupation for which he is qualified or may reasonably be expected to become qualified by any training, education, or experience.  (<u>See</u> Doc. No. 15 at 12.)  Plaintiff notes that when defendants asked Dr. Coyer to evaluate whether plaintiff had a "continued disability," it asked if plaintiff "is currently able to perform **any** gainful employment, including light duty work, modified work, or sedentary employment of any kind."  (<u>Id.</u>) (quoting from R. 292).  Plaintiff contends that Massey provided no information and made no analysis as to what plaintiff's employment qualifications were, what jobs he might be physically capable of performing, whether plaintiff reasonably could become qualified to perform those jobs, or what training, education, or experience would be required.

Plaintiff infers that defendants needed to consider some

-16-

vocational evaluation of plaintiff before denying him benefits.
Because they did not do this, plaintiff argues, there is no
evidence in the record as to what jobs he could reasonably
perform.  (See Doc. No. 15 at 13.)  Plaintiff notes that other
courts have cautioned against such failures, See Heinrich v.
Prime Computer Long Term Disability Plan and Cigna, 1996 WL
495566 (Aug. 28, 1996 N.D. Ill.), and as such, plaintiff has been
deprived of the benefits to which he was entitled.

     In response, defendant avers that the Benefits Committee did
consider vocational issues in reaching its decision.  (See Doc.
18-1 at 14) Defendants note that the administrative record
illustrates that the Benefits Committee considered the issue of
whether plaintiff is able to perform jobs which he can reasonably
be expected to become qualified given his education.  (See R.
261-62.)  Specifically, defendants note that after finding that
plaintiff was able to work based on the overwhelming weight of
medical evidence, the Benefits Committee stated that

          However, the Committee found that there was
          no objective medical evidence to preclude you
          from driving a vehicle.  In addition, even
          assuming that you could not drive, this
          factor in itself would not necessarily
          entitle you to benefits.  It was noted that
          you have a high school education and a semi-
          skilled work background.

(R. 265.)  Defendants note that the evidence proves that
plaintiff can perform "light duty work, modified work, or

-17-

sedentary employment." (Doc. No. 18-1 at 15.)  After making the
conclusion that plaintiff can perform such work from a physical
standpoint, the Benefits Committee then considered that, because
of his high school education and semi-skilled work background,
plaintiff was able to perform that type of work.  (Id.)
(discussing R. 265.)

     Defendants note that, under Fourth Circuit law, plan
administrators have no obligations to secure vocational evidence.
See Elliott v. Sara Lee Corp., 190 F.3d 601, 608 (4th Cir. 1999).
In Elliott, the court found that a benefits committee was not
required to consult a vocational expert in a case where a
claimant alleged that particular physical limitations prevented
him from doing particular job functions.  Id.  The court noted
both that the claimant was free to supplement the record and that
where plan administrators possessed reliable evidence that a
claimant was not disabled, they were not required to get further
evidence.  Id.

     Because the court finds Elliott indistinguishable from the
case at bar, the court declines to follow the 1996 Northern
District of Illinois decision in Heinrich.  In doing this, the
court notes that Heinrich is an unpublished district court
decision from another circuit, that it has never been cited as
precedential authority by any other court, and that it appears to
be outside of the mainstream in terms of cases considering

-18-

similar subject matter.  See, e.g., Elliott, 190 F.3d at 608;
Douglas v. Gen. Dynamics Long Term Disability Plan, 43 Fed. Appx.
864, 870 (6th Cir. 2002); Goldammer v. Aid Ass'n for Lutherans,
747 F. Supp. 1366, 1369 (D. S.D. 1990), aff'd, 950 F.2d 727 (8th
Cir. 1991); Block v. Pitney Bowes, 952 F.2d 1450, 1455 (D.C. Cir.
1992) (holding that the plan administrator was not required to
consider vocational evidence before making a final eligibility
decision).  Because the court declines to follow Heinrich, the
court rejects plaintiff's argument that defendants erred through
failing to consult a vocational expert.

### 2.    The Plan Did Not Err in Its Handling of Plaintiff's DIB Award.

     Plaintiff next argues that the Benefits Committee erred in
its treatment of his DIB award.  (See Doc. No. 15 at 14.)
Plaintiff notes that on September 18, 2001, the Social Security
Administration awarded him benefits, noting that even given
plaintiff's experience performing semi-skilled work, plaintiff's
"present age and limitation to sedentary work place him in an
unfavorable position to successfully adjust to sedentary work."
(See R. 233.)  This finding was in accord with the "grids"
included in the Social Security regulatory structure which direct
a finding of disability when persons reach a particular
combination of age and skill level.  (See R. 113) (discussing 20
C.F.R. § 404, subpt. P, appx. 2, Grid Rule 201.14).

     Plaintiff's position is premised on the notion that the

-19-

Social Security Administration and the Benefits Committee need to conduct similar analyses, and the Benefits Committee erred through not considering whether there are any jobs plaintiff could reasonably be expected to perform.  (See Doc. No. 15 at 15.)

Plaintiff's argument is incorrect.  First, it is clear that plan administrators are not bound by the determination of the Social Security Administration.  See Kunstenaar v. Conn. Gen. Life Ins. Co., 902 F.2d 181, 184 (2d Cir. 1990).  An ERISA plan's determination on a disability claim that differ from that of the Social Security Administration is not arbitrary and capricious so long as the plan's finding is reasonable and supported by substantial evidence.  See Anderson v. Operative Plasterers' & Cement Masons' Int'l Ass'n, 991 F.2d 356, 358-59 (7th Cir. 1993); Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279, 1286 (9th Cir. 1993).

Similarly, plans are not required under ERISA to read in the "grids" included in the Social Security system.  See Gaitan v. Pension Trust Fund, 2000 U.S. Dist. LEXIS 3323, at *15 (S.D.N.Y. Mar. 17, 2000).  Plans are not bound by regulations promulgated by the Social Security Administration.  See Pokol v. E.I. du Pont de Nemours & Co., 963 F. Supp. 1361, 1379 (D.N.J. 1997) ("Social Security determinations are not binding on ERISA plans, and should not have unintended side effects on such plans not

contemplated by the parties in initiating the plans, or by Congress, in creating the Social Security disability structure."). Such, as a matter of law, the court cannot find that defendants' failure to adopt the Social Security Administration's grids is a violation of ERISA.

Given that the Social Security Administration's decision is not dispositive, and that ERISA plans need not incorporate aspects of the Social Security Administration's regulatory structure like the grids, the question becomes whether defendants' decision was reasonable and supported by adequate evidence. From the record it appears that the plan weighed plaintiff's DIB award appropriately. Disregarding the grid determination, the award supports a finding that plaintiff is not disabled under the terms of the plan. (See R. 113-14.) Plaintiff's Social Security award indicates that plaintiff has the residual functional capacity to perform sedentary work based upon a capacities assessment performed by plaintiff's treating physician. (See R. 113.) As such, the court rejects any argument that defendants' treatment of the award was improper.

### 3.   The Plan Accorded Proper Weight to the Information Provided by Plaintiff's Treating Physician.

Plaintiff's next argument is that defendants did not accord his treating physician's opinion the weight it deserved. (See Doc. No. 15 at 16.) Specifically, plaintiff notes that although defendants based their denial of plaintiff's "continuing

-21-

disability" claim on a statement by plaintiff's treating physician that plaintiff's "condition remains stable," the spin defendants put on this piece of evidence was improper.  (Id.) Specifically, plaintiff notes that Dr. Bhirud's treatment notes indicate that plaintiff "still has 3-4 times [per week] rapid heart beat, arrhythmia" (R. 376) and "Occ[asional] palpitations." (Id.)  Plaintiff "[s]till gets light headed.  It lasts 4-5 sec, passes away.  He sits down." (R. 225.)  Plaintiff "[y]esterday got real dizzy, felt that he may pass out [but] did not feel heart beating fast.  No dizziness today.  Yesterday 3-4 times." (R. 227.)  Plaintiff "has palpitations at times."  (R. 230.)

From these notes, plaintiff notes that his condition was "stable" yet not getting better.  Plaintiff notes that defendants ignored this and other information in favor of the opinion of Dr. Coyer because they wanted to find that plaintiff did not suffer from a continuing disability.  (See Doc. No. 15 at 17.) Plaintiff admits, however, that treating physicians in the ERISA context are not entitled to the same degree of deference as they would be in comparable Social Security proceedings.

In response, defendants argue that plaintiff characterizes the decision-making process unfairly.  Defendants note that the standard of review applicable to this situation requires the court to defer to their decision so long as the decision is "reasonable, even if the court itself would not have reached a

different conclusion." (Doc. 18-1 at 17) (quoting <u>Booth v. Wal-Mart Stores, Inc.</u>, 201 F.3d 335, 344-45 (4th Cir. 2000)).[2]  In <u>Booth</u>, the court stated that, in determining whether a decision is "reasonable," a reviewing court should focus on: (1) the adequacy of the materials considered to make the decision and the degree to which they support it; and (2) whether the decision-making process was reasoned and principled.  201 F.3d at 344-45. Defendants note that here, the Benefits Committee had "a wealth" of information before it when it reached its decision, and that it advised plaintiff that he could submit any and all information in support of his appeal. (Doc. No. 18-1 at 17) (discussing R. 11, 425).  The <u>Booth</u> court focused on the degree to which the administrative record supports the plan's decision.

The sum-total of information in the record that supports a decision that plaintiff is disabled is Dr. Bhirud's August 25, 2003 letter. (R. 290.)  Although, as plaintiff points out, Dr. Bhirud's notes indicate that plaintiff is not free from medical problems, his notes do not indicate that plaintiff's medical

---

[2]  As discussed previously, because it is possible to infer a conflict of interest from the materials in the record, defendants decision is not accorded the same degree of deference. However, given the materials in the record and the language of the Plan, the court does not believe that it is possible to find for plaintiff without adopting plaintiff's position out of whole cloth.  As the court notes above, several of the pillars upon which plaintiff's position rests are legally improper.  As such, it would be inappropriate to find for plaintiff here under an appropriately deferential standard.

condition is in anything akin to a free fall.  Dr. Bhirud's office notes indicate that plaintiff is largely free from chest pain (R. 228, 237, 247, 250), dizziness or blackouts (R. 250), and that, in the doctor's eyes, is "doing ok" or "doing well" (R. 230, 232, 249).  There are no medical records in the administrative record illustrating why Dr. Bhirud's opinion as to plaintiff's medical condition had changed.  This, more than any other reason, reasonably explains why the Benefits Committee chose to rely on information other than it.  (See R. 413.)  Even accepting that there was a delay, without medical evidence in the record illustrating *why* Dr. Bhirud changed his opinion, the defendants' treatment of it was acceptable.

There is a wealth of evidence in the record supporting this notion.  Plaintiff's DIB award found him to have the capacity to perform sedentary work based on a capacities assessment performed by Dr. Bhirud.  (See R. 113-14.)  Similarly, Dr. Hess found that plaintiff was able to exercise at 88% of his maximum heart rate without signs or symptoms, and as such, was not disabled.  (R. 216-17, 244-45.)  Finally, after reviewing plaintiff's medical records as evidenced by the record, Dr. Coyer concluded that plaintiff had the ability to perform light or sedentary work.  (R. 417.)

When weighing the evidence supporting an award of benefits against the evidence opposing it, the Benefits Committee acted

-24-

appropriately.   In <u>Booth</u>, it was noted that it was the duty of the benefits committee to resolve conflicts in the evidence.   <u>See</u> 201 F.3d at 345.   Here, most of the material in the record supports the decision reached by defendants.   As such, it does not appear in any sense that defendants abused the discretion accorded them.

Similarly, it appears that defendants reached their decision in a reasoned and principled manner.   Defendants requested from plaintiff all of the materials necessary to support his claim. The June 29, 2004 letter reflects that the Benefits Committee reviewed this information and presented a reasoned summary of its decision.   The major argument plaintiff offers to the contrary is that, by virtue of its delay, plaintiff was deprived of an ability to have additional testing or see additional specialists to support his claim.   (<u>See</u> Doc. No. 15 at 9-11.)   It is clear that plaintiffs have the burden of establishing that they are disabled under ERISA.   <u>See</u> <u>Elliott v. Sara Lee Corp.</u>, 190 F.3d 601, 603 (4th Cir. 1999).   The court is unconvinced that the delay in this case, although problematic, was significant enough to shift this burden.   In that the major piece of new evidence plaintiff presented at his appeal was a letter from his treating physician indicating that he could not work, plaintiff would have had ready access to any medical records that would illustrate why his doctor changed his opinion as to plaintiff's level of

disability over his course of treatment.  As such, the court believes that defendants' decision should not be overturned.

### 4.   The Plan Did Not Improperly Favor Its Interests Vis-a-Vis Plaintiff's.

Plaintiff's final argument is that defendants, because of "a powerful conflict of interest," improperly favored the Massey corporation's interests as against plaintiff's.  (See Doc. No. 19 at 12.)  As the court discussed above, any conflict-of-interest appears to be one more of appearance than substance.  Similarly, defendants acted appropriately in denying plaintiff's claim for "continued disability."  As such, the court rejects this argument.

### IV.   Claim Based on Delay

Count II of plaintiff's complaint is for damages pursuant to 29 U.S.C. § 1132(a)(1)(B) for relief in the amount of his wrongfully denied benefits, compensatory damages, interest, attorney fees and costs, and punitive damages.  (See Doc. No. 1 at 4-5.)  Plaintiff presents no authority for the notion that he is entitled to extra-contractual relief where an ERISA benefits determination was not made in a timely fashion.  See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985) (holding that plan participants are not entitled to extra-contractual damages caused by an untimely processing of benefits).

Because Russell is still good law, and because plaintiff has

-26-

provided no argument as to why the court should not grant defendants' motion to dismiss regarding this claim, it is hereby dismissed.

### V. Conclusion

For the reasons outlined above, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.  The Clerk is directed to strike this case from the active docket of the court.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED this 3rd day of February, 2006.

ENTER:

David A.  Faber
United States District Judge